# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond

APPALACHIAN POWER COMPANY V. COMMONWEALTH OF VIR-
GINIA, AT THE RELATION OF THE NATIONAL
CARBIDE CORPORATION.

January 19, 1922.

Absent, Kelly, P., and Saunders, J.

1. APPEAL AND ERROR—*Appeal from Corporation Commission—Cer-
tificate of Findings of Fact—Statement of Reasons of Com-
mission's Decision.*—Clause (f) of section 156 of the Constitution
of 1902 requires on appeal from a decision of the Corporation
Commission a certificate of the findings of fact by the commis-
sion and an opinion or statement of the reasons upon which
the action of the commission appealed from was based.

2. APPEAL AND ERROR—*Appeal from Corporation Commission—Effect
of Certificate of Findings of Facts.*—On appeal from an order
of the Corporation Commission a certificate by the commission
in the record of facts found by the commission, under the pro-
visions of the Constitution on the subject, would evidence *prima
facie* what such facts are; and the holding of such *prima facie*
case to be conclusive as to all facts not appearing to the con-
trary from the record as presented on the appeal, would be a
result of which the appellant could not complain.

3. APPEAL AND ERROR—*Appeal from Corporation Commission—Cer-
tificate of Findings of Facts.*—Where on appeal from an order
of the Corporation Commission there is neither a complete
record, nor a certificate of facts found, it is impossible for the
appellate court to ascertain what the facts are.

1

4. APPEAL AND ERROR —*Appeal from Corporation Commission—Certificate of Findings of Facts—Statement of Reasons of Commission's Decision.*—On appeal from an order of the Corporation Commission, in the absence of any finding of facts by the commission or any opinion of the commission or statement of the reasons upon which its action appealed from was based, touching the questions involved in the case, the Supreme Court of Appeals cannot with proper efficiency undertake to consider and determine "the reasonableness and justness of the action of the commission." Indeed, under the constitutional provision (clause (f) of section 156 of the Constitution of 1902), it may seriously be questioned whether the Supreme Court of Appeals has the jurisdiction to do so.

5. APPEAL AND ERROR—*Appeal from Corporation Commission—Constitutional Provisions.*—On appeal from an order of the Corporation Commission the constitutional mandates (clause (f) of section 156 of the Constitution of 1902) should be obeyed both by the commission and the Supreme Court of Appeals in all cases.

6. APPEAL AND ERROR—*Appeal from Corporation Commission—Certificate of Findings of Facts—Statement of Reasons of Commission's Decision.*—Clause (f) of section 156 of the Constitution of 1902 plainly intends that the commission shall certify both the facts found, and shall also state the conclusions reached, upon which the action appealed from is based, separately from the evidence certified, otherwise it would be impossible for the appellate court to know to what facts or conclusions to give the *prima facie* presumption of correctness referred to in that section of the Constitution.

7. APPEAL AND ERROR—*Appeal from Corporation Commission—Opportunity to be Heard—Due Process of Law—Case at Bar.*—In the instant case on appeal by a power company from an order of the State Corporation Commission fixing the rates to be charged appellee by the power company for electric power furnished appellee, it appeared from the record that the tariff rates fixed by the order appealed from followed *verbatim* the tariff recommended by the report of the commission's engineer, filed before the commission but a few days before the order appealed from was entered; that such tariff departed radically in character from the tariff concerning which issues were made by the pleadings and upon which all the proof both for complainant and respondent were taken; and that neither complainant nor respondent were given an opportunity to consider or object to such report or its conclusions before it was considered by the commission.

*Held:* That this amounted to a denial of a hearing to the power company on the subject and deprived it of due process of law.

8.   APPEAL AND ERROR—*Appeal from Corporation Commission—Remand for Further Proceedings.*—Where a case appealed from the Corporation Commission must be remanded for further proceedings, and for a certificate of facts upon which final action of the commission may be based, and for a written statement by the commission of the reasons upon which such action is based, the Supreme Court of Appeals may, if it deems it necessary, in the interest of justice, require the case to be further investigated by the commission and reported upon to the court, in the event of the appeal being still insisted upon by appellant, before the appeal is finally decided.

Appeal from an order of the State Corporation Commission.

*Remanded for further proceedings.*

The opinion states the case.

*Robert E. Scott,* for the plaintiff in error.

*John S. Draper* and *H. T. Hall,* for the defendant in error.

SIMS, J., delivered the opinion of the court.

This is an appeal of the Appalachian Power Company from an order, or judgment, of the State Corporation Commission, entered on April 13, 1921, in the proceeding instituted by the National Carbide Corporation by its petition, filed before the commission on January 11, 1921, praying that the rates for electric power furnished the latter by the former (which were 3.3 mills per kilowatt hour for secondary power, the power company guaranteeing to furnish the carbide company with not less than 10,000,000 kilowatt hours of secondary power per annum, and 7.2 mills per kilowatt hour for primary power) be reduced to six mills per kilowatt hour for primary power, and that the

rate for secondary power remain at 3.3 mills per kilowatt hour, but that the power company be required to guarantee to furnish the carbide company not less than 15,000,000 kilowatt hours of secondary power per annum—which would have the practical effect of reducing the rate on secondary power also.

It appears from the record that by agreement in writing between the two companies, of date July 25, 1917, the carbide company undertook to forthwith design and construct a plant for the production of calcium carbide at or near Ivanhoe, Va., within two miles of the power company's hydro power station No. 4, and fully equip such plant with an initial installation of three electric furnaces of the electric power consuming capacity of approximately 15,333,333 kilowatt hours each, or approximately 46,000,000 total kilowatt hours, per annum; to purchase such power of the power company and pay therefor 3.3 mills per kilowatt hour for the secondary and six mills per kilowatt hour for primary power, the minimum charge to be $50,000.00 per year which should begin to run and be effective from the date of the completion and putting into operation of the power company's then proposed new steam plant at Glen Lyn, Va., but not earlier than March 1, 1918. Such agreement provided that the power company would supply to the carbide company all the power necessary and required for the operation of said plant, such power to consist of primary power and secondary power, secondary power being, for the purposes of the agreement, defined to be the hydro or water generated electric power which the power company "may have available from time to time over and above the requirements of all its other customers;" all other power, however obtained, being for the purposes of the agreement, defined to be primary power, the power company to be the sole and exclusive judge of whether or not and when it has secondary power available, its judgment

in the premises to be conclusive and binding upon the carbide company, and the power company guaranteed that it would furnish to the carbide company not less than 15,-000,000 kilowatt hours of secondary power per annum.

This agreement by its terms was to be in force until March 1, 1923, with the option to the carbide company to renew the agreement for a further period of five years, the rates, however, for such further period to be fixed in a certain way set forth in the agreement, based on the then prevailing cost of coal.

At the time this agreement was entered into the business of the power company had been in operation only about five years, and was in process of development, which process was expected to continue and did thereafter continue up to the time of the entry of the order, or judgment, of the commission under review; and, as appears from the record, is likely to continue to further develop for many years in the future if it is allowed to receive a fair return upon the money it has actually invested and which good business judgment may require to be and is actually further invested in the business in order to supply the growing demands of the public which it serves.

[1] The power company filed its answer, and evidence was introduced both in behalf of the complainant and respondent. By the pleadings and the proof there were a number of issues of fact before the commission. But there is no certificate of the findings of fact by the commission, nor any opinion or any statement of the reasons upon which the action of the commission appealed from was based; both of which are required by clause (f) of section 156 of the Constitution. We have no means of knowing what issues of fact the commission considered as material to its decision; what its findings of fact were on any issue; or what any of its conclusions of law were upon the issues of law presented.

[2, 3] We have nothing before us but the order of the commission appealed from and such portions of the evidence as have been certified in the record, much of it conflicting, and some of it conflicting on subjects about which experts seem to differ. Seemingly important exhibits referred to in the testimony of witnesses as filed in evidence have been left out of the record. If there were a certificate in the record of facts found by the commission, that, under the provisions of the Constitution on the subject, would evidence *prima facie* what such facts are; and the holding of such *prima facie* case to be conclusive as to all the facts not appearing to the contrary from the record as presented on the appeal, would be a result of which the appellant could not complain. But where on the appeal there is neither a complete record, nor a certificate of facts found, it is impossible for the appellate court to ascertain what the facts are.

The order appealed from states that the case was heard before the commission "upon the testimony and briefs of complainant and respondent and upon the report of the commission's engineer," and the chairman of the commission certified, under date of May 4, 1921, "that the *following* contains and sets out all of the facts and evidence upon which the action of the commission in the said proceeding was based, and which are essential to a proper decision of the appeal to be taken from such action." (Italics supplied.) This certificate is at the conclusion of the whole record as printed and presented on appeal, except the certificate of the clerk of the commission that proper notice was given of the intention to apply for a transcript of the record as the basis for appeal as required by statute, and except the report of the commission's engineer, Judson C. Dickerman, which is referred to in said order, which report is dated March 28, 1921, was filed with the commission that day, is certified by the chairman of the commission under date July 22, 1921, and appears at the end of the printed record.

We of course look to the substance and not to the mere form of the certificates just mentioned. We take the certificates to refer to what appears preceding and not "following" the certificate. It is, however, a certifying of the evidence merely, and not of any facts within the meaning of the constitutional requirements aforesaid.

[4] In the absence of any finding of facts by the commission or any opinion of the commission or statement of the reasons upon which its action appealed from was based, touching the questions involved in the case, we cannot with proper efficiency undertake to consider and determine "the reasonableness and justness of the action of the commission." Indeed, under the above mentioned provisions of the Constitution on the subject, it may be seriously questioned whether we have the jurisdiction to do so. Certainly if we did undertake to do so, we would set at naught the plain provisions of the Constitution on the subject.

Clause (f) of section 156 of the Constitution, in reference to appeals from the State Corporation Commission, so far as material, provides as follows:

"* * * the chairman of the commission, under the seal of the commission, shall certify to the appellate court all the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal, * * *. The commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof, a written statement of the reasons upon which the action appealed from is based, and *such statement shall be read and considered by the appellate court upon disposing of the appeal.* The appellate court shall have jurisdiction *on such appeal* to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal; provided, however, that the action of the commission appealed from shall be regarded as

*prima facie* just, reasonable and correct, * * *." (Italics supplied.)

[5, 6] These constitutional mandates should be obeyed both by the commission and ourselves in all cases, including the case before us. As the Constitution gives to the action of the commission appealed from, the *prima facie* presumption of correctness, it is plain that it intends that the commission shall certify both the facts found and shall also state the conclusions reached, upon which the action appealed from is based, separately from the evidence certified, otherwise it would be impossible for the appellate court to know to what facts or conclusions to give such presumption. Moreover, the language of the Constitution expressly requires this to be done. The certificate of facts also should be in such detail, by schedule or otherwise, as to the several items which must be considered by the commission in reaching its decision, as to show such items separately.

[7] Further: It appears from the record that the tariff of rates fixed by the order appealed from follows *verbatim* the tariff recommended by the report of the commission's engineer, Judson C. Dickerman, which was dated and filed before the commission on March 28, 1921, as aforesaid, but a few days before the order appealed from was entered that such tariff departed radically in character from the tariff concerning which issues were made by the pleadings and upon which all the proof both for complainant and respondent was taken, in that it does not fix separate rates upon primary or secondary power, as both complainant and respondent contemplated would be done, but a uniform flat rate, not dealt with by the pleadings or the proof; and that neither complainant nor respondent were given any opportunity to consider or object to such report or its conclusions before it was considered by the commission.

One of the assignments of error before us by the power company is that the commission erred in receiving said report and in considering same, because—

"(a). It was made and returned without notice to your petitioner and received and considered without any opportunity to it to except thereto or to controvert its findings;

"(b). Its findings of facts are contrary to the evidence produced before the commission and without evidence to support them; and

"(c). The rate recommended by said report is unjust, insufficient and confiscatory, and, if put into effect, will deprive your petitioner of its property without just compensation and without due process of law, contrary to the Constitution of the United States in such case made and provided."

We think that this assignment of error is certainly in part well taken. In view of the fact that the report in question recommended a different kind of rate schedule from that contemplated by the pleadings and with reference to which the proof for both the power company and the carbide company was taken, the action of the commission in considering such report and in adopting the rate thereby recommended, without any opportunity given the power company of considering such report, or the subject of the uniform flat rate, which was fixed by the order appealed from, or of presenting its views on the subject by exception to such report, or otherwise, before the order appealed from was entered, amounted to a denial of a hearing to the power company on the subject. That is to say, the commission in such action deprived the power company of due process of law.

[8] The case will have to be remanded to the commission for further proceedings. That being so, as the evidence in the record with reference to many of the elements entering into the expected cost of the service following the entry of the order appealed from and with reference to the actual net return to the power company expected to result from the rates which have been in force since that order was en-

tered, was necessarily speculative, because of the dates at which it was introduced, the accuracy or inaccuracy of which can now be checked up by comparison with actual conditions and results which have followed the entry of said order down to the time at which the case is again taken up by the commission for further consideration, we feel that we should say (practically in the language of another portion of clause (f) of section 156 of the Constitution not above quoted), that we deem it necessary, in the interest of justice, to require the case to be further investigated by the commission and reported upon to the court, in the event of the appeal being still insisted upon by appellant (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided.

The case will accordingly be remanded to the commission for further proceedings, and for certificate of facts upon which the final action of the commission may be based, and  for a written statement by the commission of the reasons upon which such action is based, in the event of an appeal being still insisted upon by appellant, all in accordance with the views expressed in this opinion. Meanwhile, the appeal will be considered as still pending in so far as the respective rights of the two companies are concerned, and no order as to costs will be entered at this time.

*Remanded for further proceedings.*