# Staunton.

## ROANOKE WATER WORKS COMPANY v. COMMON-WEALTH OF VIRGINIA.

### September 20, 1923.

1. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation for Rate Making Purposes.*—The true principles applicable in establishing rates to be charged by public service corporations have never been settled with anything approaching certainty and standardization. The subject is beset with difficulties, and no hard and fast rule can be safely laid down for fixing valuations for rate making purposes. The subject of rate making should be approached by commissions and courts with a view to doing what is fair and just between the parties under all the circumstances of the particular case.

2. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Waters and Water Works—Fixing Rates—Report of Engineers.*—In proceeding before the Corporation Commission to fix water rates, the report of engineers and the information obtained from officials and agents of insurance companies related to the question of fire protection and service conditions, and the Commission's action thereon, was apparently confined to the requirement that the company should expend $500,000 in additions and improvements. This requirement was not complied with by the company, the conditional rates based on such requirement were canceled, and the case to all intents and purposes stood before the Commission when the final order was made, and on appeal, as if such report and survey had not been made. Therefore, the water company could not complain that the report in question was not introduced in evidence, was not a part of the record, and that it had no opportunity to test the accuracy of the report, or of the information obtained from the insurance companies.

3. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation—"Present Value Theory."*—In valuing the property of public utility corporations for the purpose of fixing rates, the "present value theory" and not the "prudent investment theory" ought to control in fixing the rate base. This does not mean that the value of the property when determined is to be absolutely controlling, but that it is one of the chief elements in fixing the rates and charges.

4. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation—"Present Value Theory"—Depreciation.*—In determining the valuation of a

public utility under the "present value theory" proper consideration must be given to what would be the cost of a reproduction or replacement of the property, less a proper deduction for depreciation.

5. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Fixing Rates—Weight to be Given to Commission's Decision on Appeal.*—In reviewing the action of the State Corporation Commission in fixing a valuation of the property of a public utility for rate making purposes, the Supreme Court of Appeals must, if the Commission has certified the facts, and has stated the reasons for its finding, as required by the Constitution of 1902, regard the same as *prima facie* just, reasonable, and correct, not only because section 156-f of the Constitution so directs, but also because the Commission is the department of government especially charged with the duty of fixing rates and charges, and especially equipped for and experienced in that field of public service.

6. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation of Property —Opinion not Supported by Evidence—Certificate by Commission of Facts and Reasons.*—While it is true that the valuation of property for rate making purposes must always be in large measure a matter of opinion and judgment by the rate making body, the valuation ought not to be fixed by an opinion which does not appear to be supported by evidence and which is unexplained. And unless the Supreme Court of Appeals has before it a certificate from the Commission of the facts found by it and of the reasons upon which its opinion is based, it cannot with proper efficiency undertake to consider and determine the reasonableness and justness of the action of the Commission.

7. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation of Water Company—Appeal—Certificate by Commission of Facts and Reasons— Case at Bar.*—In the instant case the Corporation Commission in fixing the valuation of a water company for rate making purposes allowed twenty per cent. appreciation upon pre-war prices. The evidence seemed to show without conflict that prices had increased at the time of the valuation at least seventy per cent., and there was a liberal deduction made by the Commission on account of depreciation. No reason was assigned by the Commission for allowing so small an amount on account of increased cost. While the Commission may have taken into consideration elements which were proper to be considered in reaching what it believed to be a just and reasonable allowance for appreciation, the fact remains that the Commission did not certify to the Supreme Court of Appeals the facts upon which it adopted twenty per cent. as the amount to be allowed for appreciation, or the reasons which guided it.

*Held:* That this item must be remanded to the Commission for further consideration and report.

8. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation of Property for Rate Making Purposes—Adoption of Company's Own Tabulation of*

*Value of Property—Case at Bar.*—In the instant case the State Corporation Commission, in valuing real estate owned by a water company for the purpose of fixing rates, adopted substantially the present value as contended for by the company.

*Held:* That although two real estate experts testified in the case that the property was of greater value, the Commission did not err in adopting the valuation made by the assistant superintendent of the company, and presented to the Commission.

9. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation of Water Rights for Rate Making Purposes—Cost of Obtaining a Substitute Supply —Case at Bar.*—In valuing the water rights of a water company for the purpose of rate making, the Commission took the cost of obtaining and purifying water from a different source as a basis; but made no allowance for pumping equipment installed since a previous appraisement, and none on account of the fact that since that appraisement conditions had arisen which would make the substitute supply cost much more than it would have cost at the time of the first appraisement. The appraisers in the first appraisement adopted the cost of such substitution as the measure of value. The Commission adopted the same measure of value, but without making any allowance for changed conditions.

*Held:* That allowance should have been made the water company on account of the fact that since the previous appraisement conditions had arisen which would enhance the cost of obtaining the substitute supply.

10. PUBLIC SERVICE AND CORPORATION COMMISSIONS— *Valuation of Water Company—Commission's Action Prima Facie Correct—Case at Bar.*— Where, in valuing the property of a water company, the State Corporation Commission allowed ten per cent. of the pre-war property as the proper amount for overhead construction costs, and the facts and reasons upon which that finding was based were set forth in substantial compliance with the Constitution, the Supreme Court of Appeals held that upon its own judgment as well as upon the *prima facie* presumption of correctness which it must accord thereto, the action of the Commission in this particular was just and reasonable.

11. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Valuation of Property —Going Value—Certificate of Facts and Reasons.*—Where, in valuing the property of a water company for rate making purposes the Corporation Commission fixed the going value at a lower figure than that claimed by the company, and lower than that advocated by the appraiser in a previous appraisement, and failed to certify the facts found and reasons to support this lower figure, the Supreme Court of Appeals in remanding the case refused to settle the question finally, but left it open to adjudication if the case should come before it again with a statement of facts and reasons upon which the action of the Commission was based.

Opinion.

12.  PUBLIC SERVICE AND CORPORATION COMMISSIONS —*Valuation of Property of Public Utility for Rate Making Purposes—Allowances for Losses Incurred under Rates Previously Fixed by Commission—Case at Bar.*—In the instant case, an appeal from an order of the Corporation Commission fixing rates of a water company, the company claimed that it should be allowed to recover by amortization through rates charged to consumers fixed by a previous order of the Commission, and losses incurred short of a fair return. The company filed a motion for rehearing shortly after the previous decision, but the motion was continued generally at the suggestion of the company, and deficiency in earnings was not brought to the Commission's attention until much later. The deficiency was due to increased operating expenses which proved to be substantially greater than the estimate advanced by the company.

*Held:* That the Commission did not err in refusing this claim.

13.  PUBLIC SERVICE AND CORPORATION COMMISSIONS— *Fixing Rates—Reasonableness of Return of Seven Per Cent.*—Upon the valuation of a water company, as fixed by the Corporation Commission, the rates prescribed by it allowed a return of seven per cent., with a depreciation reserve of one and two-tenths per cent. Complaint was made by the company of this rate as being too small.

*Held:* That if the valuation was fair, the Supreme Court of Appeals could not interfere with the judgment of the Commission in this respect, although the evidence showed that utility companies could not at the time obtain money at that rate.

14.  PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Fixing Rates—Reasonableness of Return of Seven Per Cent.*—A net return of seven per cent. upon the investment as a whole, based upon a valuation which represents a material appreciation over original cost, cannot be said to be unfair, and is usually held to be just and reasonable.

Appeal from an order of the State Corporation Commission.

*Remanded for further proceedings.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* and *W. C. Faulkner,* for the appellant.

*Jackson & Henson* and *Horace M. Fox,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decision of the State Corporation Commission fixing the rates to be charged by the Roanoke Water Works Company to its patrons.

The controversy began in December, 1919, when the company filed with the Commission a revised schedule of rates and charges to be effective on February 1, 1920. The city of Roanoke having objected to the proposed increases, the matter came on to be heard before the Commission on March 2, 1920, and was continued from time to time until a decision was rendered therein fixing a schedule of rates to be effective April 1, 1920. This schedule was based upon a finding by the Commission placing the value of the company's property for rate-making purposes at $1,133,925.69. The company had introduced evidence to show that the value, depending upon the rule or theory adopted for its determination, should be placed at a minimum of $1,812,982.00 and a maximum of $2,560,504.00.

On June 3, 1920, the company filed a petition for re-hearing, which, at its suggestion, was duly noted on the record without further action therein, and the cause was continued generally.

The company experimented with the rates as thus fixed by the Commission until January 30, 1922, and in the meantime no further step was taken in the proceeding now under review. On the last named date the company, claiming that such rates were inadequate, filed a second revised schedule to become effective on March 1, 1922, to which the city objected, and another hearing was held before the Commission beginning on the 17th of February, 1922. In the meantime, to-wit, on February 2, 1922, this court handed down an opinion in the case of *Petersburg Gas Co.* v. *City of Petersburg*

(132 Va. 82, 110 S. E. 533, 20 A. L. R. 542), which was recognized by the Commission, as well as by the water company and the city, as having a material bearing upon the present controversy, and thereafter the company filed a third revised schedule of rates, which it undertook to maintain on the final hearing before the Commission, and which it now seeks to uphold on this appeal.

Pending the second hearing before the Commission, the city had an audit made of the company's books, and reported to the Commission that upon such audit it had no fault to find with the books. Before a final decision was made the city requested the Commission to appoint a disinterested engineer to make a survey of the property of the company and file a report upon the efficiency of the system, with recommendations as to what additions, if any, would be necessary to afford adequate fire protection and proper water service to the people of the city of Roanoke. This request was granted, and upon the coming in of the engineer's report the Commission "deemed it best to consult fire insurance authorities," and held several conferences in Atlanta and Richmond with the officials and agents of the Southeastern Underwriters Association with a view to determining the adequacy of the service, particularly with reference to fire protection.

Pending a final decision the Commission put into effect as of March 15; 1922, as an emergency measure, a temporary schedule of rates and charges materially increasing those allowed by its order of April 1, 1920, heretofore mentioned.

On August 31, 1922, the Commission rendered a decision whereby it valued the property at $1,472,026.00, declaring that the prevailing emergency rates were just and fair, based on such valuation, but providing for and

allowing certain further increases in the rates to become effective February 1, 1923, on condition that the company should, in the meantime, expend $250,000 of a total of $500,000, which it directed the company to spend in additions and betterments upon its property.

On February 1, 1923, the company filed with the Commission a petition alleging *inter alia* that without waiving its objections to the decision of August 31, 1922, it had undertaken in good faith to see by actual experiment whether it were practicable to comply with the order of the Commission and effectively operate the property upon the schedule of rates prescribed in March, 1922, and that with this end in view it had endeavored to devise means for making the improvements directed by the Commission; that it had been unable to borrow money or make any permanent financial arrangement for the purpose of carrying out the said improvements; and that it had made some of such improvements out of current revenues at an aggregate cost of $48,800.00.    This petition concluded as follows:

"The Roanoke Water Works Company renew its objections and exceptions to the rulings of the Commission as set forth in its petition to rehear heretofore filed, as aforesaid, to the same extent as if the same were herein repeated at length, reference being made to said petition for details of said objections and exceptions.

"The company feels compelled, therefore, to respectfully present these facts to the Commission, and to respectfully pray—

"(a) That the company may be given an adequate valuation of its property, in no event less than $2,107,-000, as of January 1, 1922, with the additional value of such improvements as have since been made.

"(b) That amended schedules of rates and charges filed with the Commission February 17, 1922, be immediately made effective.

"(c) That in the alternative, and without waiving its objections to the valuation aforesaid or its claim of its right to the rates and charges prescribed in said schedule of February 17, 1922, that the Commission would make effective as of February 1, 1923, without condition or limitation, the schedule of rates and charges prescribed in its order of August 31, 1922, in which latter event the company would undertake to operate under said schedule for a reasonable time to ascertain if the revenues which would be derived therefrom would enable it to continue to apply said rates.

"(c) And the Roanoke Water Works Company would further respectfully pray that the Commission enter a final order herein at the earliest date practicable."

Thereupon on the same date, February 1, 1923, the Commission entered the order from which this appeal was allowed, which is as follows:

"This day came Roanoke Water Works Company by counsel, and filed its petition in this proceeding, praying the Commission to enter an order giving the petitioner a valuation of its property not less than $2,107,000.00 as of January 1, 1922, plus the value of net additions since that date; that the amended schedule of rates and charges filed with the Commission February 17, 1922, be immediately made effective; or that in the alternative, and without waiving petitioner's objections to the valuation of its property fixed by order of the Commission dated August 31, 1922, the Commission make effective as of February 1, 1923, without condition or limitation, the schedule of rates and charges provisionally authorized in the said order of August 31, 1922;

"And it appearing to the Commission that the said Roanoke Water Works Company has not complied with the conditions attached by the Commission in its said order of August 31, 1922, to the rates conditionally authorized to be effective February 1, 1923;

"And it further appearing from the prayer of the petition that the purpose thereof is to secure a rehearing of the Commission's judgment entered herein on August 31, 1922, and no sufficient reason for such rehearing being alleged in said petition or otherwise appearing to the Commission,

"It is ordered, that the prayer of the petition of Roanoke Water Works Company be and the same is hereby denied; that the rates to be conditionally effective February 1, 1923, under the provisions of the Commission's order of August 31, 1922, are hereby cancelled and annulled by reason of the failure of said Roanoke Water Works Company to carry out and perform the conditions thereto attached, and that on and after February 1, 1923, the Roanoke Water Works Company shall charge and collect not in excess of the rates established by the schedule filed with the Commission, effective March 15, 1922, which were found by the Commission in its judgment of August 31, 1922, to be fair and reasonable rates."

[1] It seems superfluous to say that the true principles applicable in establishing rates to be charged by public service corporations have never been settled with anything approaching certainty and standardization. Public utility commissions and the State and Federal courts have struggled with the subject of rate making for years, under a general legislative plan by which the decisions of the commissions have been subject to a limited judicial review and control, with the result that no definite standards have been fixed for the determination of either the rate base or the measure of return thereon. The subject involves inherent difficulties which up to the present time have baffled the best expert and judicial minds in their efforts to evolve a system sound and just in principle and uniform in applica-

tion.  The reported decisions upon the subject by rate making bodies and by the courts are in a state of conflict and confusion.  Some late extra-judicial expressions which show that the commissions and the courts are not alone in their difficulties may be found in an article entitled "Political Economic Review," by Professor Robt. L. Hale, of Columbia University, published in the American Bar Association Journal, June, 1923, page 392, and a reply thereto by Mr. W. H. Maltbie, appearing in the same publication, August, 1923, page 534.  See also "Judicial Review of Administrative Action in Virginia," by Mr. Armistead M. Dobie, 8 Va. Law Rev. 477, 504, and the numerous other articles on the subject by law writers cited by Mr. Justice Brandeis in the dissenting opinion hereinbelow referred to.

The latest thought on the question, so far as we have seen, by the highest judicial tribunal in the land, is found in the cases of *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Commission of Missouri*, 43 Sup. Ct. 544, 67 L. Ed. — (May 21, 1923); *Bluefield Water Works, etc., Co.* v. *Public Service Commission of W. Va.*, 43 Sup. Ct. 675, 67 L. Ed. — (June 11, 1923), and *Georgia Ry. & P. Co.* v. *Railroad Commission of Georgia*, 43 Sup. Ct. 680, 67 L. Ed. — (June 11, 1925).  In the first of these three cases the members of the court were divided, Mr. Justice Brandeis concurring in the result but differing fundamentally from the majority of the court as to the grounds upon which the result was reached, and filing a vigorous and learned dissenting opinion, concurred in by Mr. Justice Holmes.  In the second of the cases cited above, the court followed the decision in the first case, Mr. Justice Brandeis concurring in the result but not in the principle of the decision. In the third case the opinion was written by Mr. Justice Brandeis, but there was a dissenting opinion by Mr.

Justice McKenna, who undertook, as we think quite plausibly, to show that the third and last decision could not be reconciled with the other two. Furthermore, it is. not without significance, as showing that the principles to be applied are still unsettled, that while Mr. Justice Brandeis in the first two cases above cited dissented from the reasons assigned in the majority opinions, he concurred in the result therein because he thought the Commission had reached the conclusion which ought to have been reached if it had adopted the theory which he advocated in fixing the rate base. He criticized the theory of the majority because it was necessarily based upon opinion and conjecture, and yet it seems to us that his opinion shows, that the theory which he advocated would have to be practically applied in much the same way. The majority opinions followed what may be called the "present value theory," and Mr. Justice Brandeis advocated what is known as the "prudent investment theory," but it must be manifest that in the practical application of either of these theories the result in every case must at last depend in large measure upon speculative opinion and judgment.

We have made this general reference to the above cases, not as a criticism, but to emphasize the difficulty which the courts have had in dealing with the subject and the want of any settled standards of decision. They seem to fully justify the language of this court in the most recent Virginia case in point—*Petersburg Gas Co. v. Petersburg, supra*— wherein Judge Burks, who delivered the opinion, said: "The subject is beset with difficulties and no hard and fast rule can be safely laid down for fixing values for rate making purposes."

There has, of course, never been any difficulty in agreeing upon the primary purposes which should control every decision on the subject. That purpose was

expressed by Judge Burks in the *Petersburg Case* as follows: "The subject of rate making should be approached by commissions and courts with a view to doing what is fair and just between the parties under all the circumstances of the particular case." The difficulty arises in finding the true general principles and in applying them to the particular case.

We have no hope that this opinion will add anything of value to the subject. Our own views thereon are set forth at length in the *Petersburg Gas Co. Case*, and the opinion in that case is substantially in accord with the previous holdings of the Supreme Court of the United States and with the recent cases above mentioned which were decided by that tribunal after our decision in the *Petersburg Case*. It shall be our purpose to follow the latter case and the United States Supreme Court decisions. This, as we understand, is what the State Corporation Commission intended to do in its orders of August 31, 1922, and February 1, 1923, and is what both parties to this litigation contend should be done in this court, except that there seems to be a contention on the part of counsel for the water company that in fixing present value no deduction should be made for depreciation.

[2] The engineer's report, hereinbefore referred to, made at the request of the city of Roanoke, and the information derived by the Commission from the insurance authorities, were discussed somewhat at length in the opinion of the Commission. The appellant complains of the fact that the report in question was not introduced in evidence, is not a part of the record, and that it had no opportunity to test the accuracy of the report or of the information obtained from the insurance authorities. We do not see, however, that the appellant can successfully assail the decision of the

Commission on this ground. The report and the information obtained from officials and agents of insurance companies related to the question of fire protection and service conditions, and the Commission's action thereon was apparently confined to the requirement that the company should expend $500,000.00 in additions and improvements. This requirement, as shown by the order of February 1, 1923, was not complied with, the conditional rates based on such requirement were cancelled, and the case to all intents and purposes stands before us, and stood before the Commission when the final order was made, as if such report and survey had not been made.

[3, 4] The controversy in this case hinges mainly upon the valuation of the company's property. However much difference of opinion there may be among the authorities generally as to whether the "prudent investment theory" or the "present value theory" ought to control in fixing the rate base, the parties to this litigation, the Commission and this court, are in substantial accord upon the proposition that the present value theory is, upon the authority of the decisions of this court and of the Supreme Court of the United States, the one which must control the decision in this case. This does not mean that the value of the property when determined is to be absolutely controlling, but that it is to be one of the chief elements in fixing the rates and charges. In determining such valuation "proper consideration" (whatever that may mean) must be given to what would be the cost of a reproduction or replacement of the property (new), less a proper deduction for depreciation. As already observed, the appellant seems to contend that depreciation ought not to be considered, certainly in the instant case, but this contention is contrary to the authorities which we regard as binding

upon us and as sound in principle. Of course, cases might arise in which the property to be valued could not reasonably be said to have suffered any depreciation at all, but such cases must be rare and this is not one of them.

The Commission, both in its decision of April 1, 1920, and in its decision of August 31, 1922, adopted the present value or reproduction cost theory. In the former decision, however, as in the *Petersburg Gas Co. Case*, it took the pre-war unit of prices as practically the sole basis for ascertaining the value of the property for rate making purposes, and failed to give "proper consideration" to the increase in value during and since the World War. In rendering its second decision herein, the Commission undertook to correct this error and to follow the opinion of this court in the *Petersburg Gas Co. Case*.

[5] This brings us to a consideration of the valuation of the property as fixed by the Commission upon the second hearing of the cause. In reviewing this action of the Commission we must, if the Commission has certified the facts and has stated the reasons for its finding, as required by the Constitution, regard the same as *prima facie* just, reasonable and correct, not only because section 156-f of the Constitution so directs, but also because the Commission is the department of government especially charged with the duty of fixing rates and charges, and especially equipped for and experienced in that field of public service.

1. Under the head of "Fair Valuation of Property," the opinion of the Commission says:

"At the rehearing the company claimed a fair valuation of its property as of January 31, 1922, at $2,222,-518.00, less $129,764.00 net depreciation, making a value of $2,092,754.00. At the adjourned hearing,

March 15th, the company presented a further claim of
$15,000.00 for cash working capital which had been
omitted in the valuation presented at the hearing of
February 17th. The claimed value is, therefore, as of
January 31, 1922, $2,107,754.00. This is the estimated
amount it would cost to reproduce the property on that
day, including intangible items.

"In the decision of the case on April 1, 1920, the
Commission, as already stated, used a reproduction of
pre-war property at pre-war prices, plus actual cost of
additions to the date of that valuation, arriving at a
value of $1,133,925.00.

"The opinion of the Supreme Court of Appeals in
the *Petersburg Gas Case*, handed down on the end day
of February, 1922, found 'fundamental error in taking
the pre-war unit of prices as practically the sole basis
for ascertaining the reproduction value of the gas
property for rate making purposes.'

"Stating that 'the subject is beset with difficulties and
no hard and fast rule can be safely laid down for fix-
ing values for rate making purposes,' the Supreme
Court, speaking through Judge Burks, quotes with full
approval the decision of the Supreme Court of Illinois
in *State Public Utilities Commission* v. *Springfield Gas
& Electric Co.*, 291 Ill. 209, 125 N. E. 891, in which the
court found that in the ascertainment of fair value, 'the
original cost of construction, the amount expended in
permanent improvements, the present cost of construc-
tion, the probable earning capacity of the property
under the particular rates prescribed by statute, and the
sum required to meet operating expenses are all matters
for consideration and are to be given such weight as may
be just and right in each case.' Quoting the leading
and well known cases of *Smyth* v. *Ames*, 169 U. S. 466,
18 Sup. Ct. 418, 42 L. Ed. 819; *San Diego Land & Town*

*Co.* v. *National City,* 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; *Stanislaus* v. *San Joaquin and Kings River Canal & Irrigation Co.,* 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406; *Chicago Union Traction Co.* v. *City of Chicago,* 199 Ill. 579, 65 N. E. 470; *Duluth Street Railway Co.* v. *Railroad Commission,* 161 Wis. 245, 152 N. W. 887.

"The Supreme Court decision, which is law, makes it necessary for the Commission to adopt in this case a valuation method different from those pursued in the *Petersburg Gas Case* and in the former hearing of this case, by giving greater weight to the higher unit prices of material and labor that have now existed for nearly five years. The Commission had already recognized the continuance of the higher level prior to the Supreme Court decision in the *Petersburg Case,* by various decisions, including the valuation of the Virginia Railway and Power Company, in March, 1921, followed by the decision in the case of the Lynchburg Traction and Light Company, and in other instances. The method has been explained in detail in opinions filed in connection with orders entered in these cases.

"In the *Roanoke Water Works Company Case,* as in others, the Commission will begin with pre-war property at pre-war unit reproduction prices, and will appreciate this pre-war value twenty per cent. War time and pre-war conditions are included at estimated and actual cost."

[6] While it is true that the valuation of property for rate making purposes must always be in large measure a matter of opinion and judgment by the rate making body, the valuation ought not to be fixed by an opinion which does not appear to be supported by evidence and which is unexplained. And, as we held in the case of *Appalachian Power Company* v. *Commonwealth,* 132 Va.

1, 110 S. E. 360, unless we have before us a certificate from the Commission of the facts found by it and of the reasons upon which its opinion is based, "we cannot with proper efficiency undertake to consider and determine 'the reasonableness and justness of the action of the Commission.' " See also to the same effect *Petersburg Gas Company Case, supra.*

[7] We are unable, from any facts found by the Commission, to understand why only twenty per cent. appreciation was allowed upon pre-war prices. The evidence seems to us to show without conflict that prices had increased at the time of the valuation at least seventy per cent., and there was a liberal deduction made by the Commission on account of depreciation. We do not think any reason is assigned by the Commission for allowing so small an amount on account of increased cost. It is true that, in the general discussion which we have quoted from the opinion, the Commission refers, at least indirectly, to the settled rule that present replacement cost is not controlling in fixing the rate base, and while it may be true, as a matter of fact, that the Commission did take into consideration elements which were proper to be considered in reaching what, of course, it believed to be a just and reasonable allowance for appreciation, the fact remains that the Commission did not certify to us the facts upon which it adopted twenty per cent. as the amount to be allowed for appreciation, or the reasons which guided it in that particular. As the matter appears to us at this time upon the record, it seems that this allowance for appreciation is too small in view of the evidence, and that "proper consideration" has not been given to replacement costs. At any rate, we feel that the case as to this item must be remanded to the Commission for further consideration and report, in accordance with the course which was

taken in the case of *Appalachian Power Company* v. *Commonwealth, supra.*

[8] 2. As to the real estate owned by the company, exclusive of water rights, the Commission adopted substantially the present value as contended for by that company. This valuation as allowed was $172,388.00 and the company contends that the true value under the evidence should have been $180,500.00. It is true that the two real estate experts who testified in the case seem to have given evidence which lends support to this contention on the part of the company, but in the valution which was made by Mr. Chas. E. Moore, assistant superintendent of the company, and presented to the Commission, he tabulated and valued the real estate of the company so as to show an aggregate value of $172,388.00, and these are the figures which were adopted by the Commission.

3. Under the head of "Water Rights" the Commission in its opinion says:

"The Roanoke Water Works Company, in the appraisal of its property filed in this case, claims a value of $589,115.00 for water rights.

"In the valuation made by the board of appraisers representing jointly the company and the city of Roanoke, there was included the sum of $200,000.00 as the value of the water rights as of July 1, 1913. At the hearing of the rate case on March 2, 1920, Mr. Dabney H. Maury, for the Roanoke Water Works Company, who had been a member of the board of appraisers in 1913, testified that in his judgment the board placed too high a value upon this item. He explained the result by saying that the engineers having been unable to reach an agreement, and all being desirous of bringing in a unanimous report, it was agreed to refer the item to the chairman, and to abide by his decision. He placed

the value of the company's water rights at $200,000.00. Mr. Maury testified in 1920 that, in his opinion, this item was fairly worth $140,000.00 in 1913.

"In this case the engineering appraisal states that the value of the water rights for Crystal springs, as determined by the appraisers in 1913, was based on capitalization of the cost of purifying an equal amount of water obtained from Roanoke river. 'They included the fixed charges on the investment needed to install a modern purification plant, the cost of labor, fuel, coagulants and attendants needed in the operation of the plant and the cost of pumping the water from the source of supply into the purification plant.'

"It is further stated that River spring and Muse spring were placed at a lower figure in the 1913 appraisal due to the fact that additional pumping equipment, with its attendants, would have to be maintained; that since that report, high pressure automatic stations have been installed at these two plants, warranting a readjustment in the value, capitalized at eight per cent., so as to reach $274,115.00. It is further said that since the State Health Department's engineer has expressed the opinion that if any water were obtained from Roanoke river, it would have to be taken above the town of Salem, or approximately 35,000 feet further from the center of distribution than Crystal springs supply, the fixed charges or annual cost on such investment, capitalized at eight per cent., would give a value of $315,000.00. This sum, added to the original value as modified, makes up the present claimed value of water rights $589,115.00.

"It seems well established that water rights have an actual value. The Supreme Court of the United States in *San Joaquin & Kings River Canal & Irrigation Co.* v *County of Stanislaus* (233 U. S. 455, 459, 58 L. Ed. 1041.

1046, 34 Sup. Ct. Rep. 652) passed upon the principle involved. The company was the owner of the right to withdraw and divert certain water for irrigation purposes and the value of that right was held to be an essential factor in fixing the rates. The Supreme Court added, 'We are not called upon to decide what the rate shall be, or even the principle by which it shall be measured.'

"The question is further discussed by Oregon Public Service Commission, *In re Douglas County Light & Water Co.*, PUR 1920E, 667; by Vermont Pub. Ser. Com., *In re Colonial Power & Light Co.*, PUR 1920A, 215; by Indiana Public Service Com., *In re Indianapolis Water Co.*, PUR 1917E, 556; by West Virginia Pub. Ser. Com., *In re Bluefield Water Works and Imp. Co.*, PUR 1921E, 655; by Pennsylvania Pub. Serv. Com., in *Borough of Coudersport* v. *Consolidated Water Co.*, PUR 1919F, 196, and in *Borough of Kane* v. *Spring Water Co.*, PUR 1919C, 404; Maryland Pub. Ser. Com. in *Westminster* v. *Consolidated Public Utilities Co.*, PUR 1919E, 506; and by Missouri Public Service Com. in *Springfield City Water Co.* v. *City of Springfield*, PUR 1919D, 853. In none of these cases is any definite rule laid down for determination of the value of such rights, and the amount is reached according to the judgment of the regulatory body.

"Mr. J. W. Boswell, whose business is that of real estate agent in the city of Roanoke, testified by deposition in this case (Moore, Exhibit No. 2, page 7), that in arriving at the value of the company's land he took in consideration the fact that the property was worth more because of the presence of the springs, 'but not springs to be used for commercial purposes.' He added that if the spring had not been on the property his estimated values would have been 'some less, not very much less.'

"It is not probable that the appraisers added a material amount for use of the springs for domestic purposes by *purposes* establishing their homes on the land and those near by. However, to any extent that the value of the springs was included, it would amount to a duplication of values were the theory of the company accepted.

"The theory of capitalizing in favor of the company the total saving achieved by taking the water from the springs instead of from Roanoke river, is not endorsed by the Commission. We have discussed the principle at length, *In re Valuation of Light and Power Properties of Virginia Railway and Power Company*, in our opinions in our *Case 1138*, dated April 12, 1922 (PUR 1922D, page 352). We think the same arguments apply. The company is entitled to benefit in valuation of its property and its foresight and risk in acquiring the water rights, and the public is entitled to benefit in lower rates than would otherwise be necessary, because of its proximity to the water supply.

"From all authorities the determination of the amount of water rights value is stated to be a matter of judgment. The Commission takes as a basis the cost of purifying the amount of water used during the year 1921, which, capitalized at eight per cent., gives a valuation of $199,540.00. Accordingly we allow a valuation of $200,000.00 for the water rights."

[9] It is clear from the concluding portion of this extract from the opinion that the Commission has made no allowance for pumping equipment installed since the 1913 appraisement, and none on account of the fact that since that appraisement conditions have arisen which would make a substitute supply from Roanoke river cost much more than it would have cost at that time. The appraisers in 1913 adopted the cost of such substitution as the measure of value. The effect of

what the Commission has done, as we understand it, is to adopt the same measure of value which the appraisers adopted in 1913, but without making any allowance for changed conditions. We are not concerned now with the question whether the proper measure of value was adopted or not. The question, as it seems to us, is whether the measure which both parties and the Commission have relied upon has been properly applied. We find no serious question made as to the correctness of the *figures* relied upon by the Company as to the value of its water rights except that, as pointed out by the Commission, Mr. Maury, although consenting to the 1913 valuation at $200,000.00, expressed the individual view that $140,000.00 would be about fair. We might assume that the Commission thought proper to deduct something from the appraisement value in 1913 on account of this statement by Mr. Maury but for the fact that the concluding language of the opinion seems to preclude any such assumption. So far as we are able to understand, the Commission in effect has adopted as the measure of value of the water rights the cost of purifying the water. We do not perceive any reason for adopting this method, except that the appraisers in 1913 adopted it in order to determine what a substitute supply from Roanoke river would cost. If that is to be the basis, surely something substantial ought to be allowed on account of the fact that since 1913 conditions have arisen which would make it necessary to get the substitute supply at a much greater distance from the center of distribution than was possible when that appraisement was made. As the case must be remanded with respect to certain other items, we will not undertake to fix the value of the water rights, but will leave it to the Commission to restate the value in accordance with the views hereinbefore expressed, upon

the evidence already before it, and such additional evidence, if any, as the Commission may permit the parties to adduce.

[10] 4. Under the head of "Other Items of Value" the Commission said:

"In section 14 of the company's valuation, there are presented 'Other Items of Value' which are therein called intangible items. These include preliminary expense, interest on real estate during construction, interest on water rights during construction, engineering and supervision, interest on construction costs during construction, and operating capital. The total is given as fifteen per cent. on the values other than real estate, water rights, tools, supplies and equipment. Some of these items undoubtedly enter into a determination of going value in the light of the decision of the United States Supreme Court in the case of *Galveston Electric Co.* v. *City of Galveston*, 258 U. S. 388, 42 Sup. Ct. 351, 66 L. Ed. 678, April 10, 1922. We take instead the Maury figures of $70,168.00, which is rather more than ten per cent. of the pre-war property, as the proper amount for overhead construction costs. As a matter of fact those items which properly entered into overheads, such as engineering, supervision, taxes and insurance during construction, are not intangible items at all, but real and tangible values which are an essential part of the property. As to overheads on construction costs since June 1, 1912, they are under our method of valuation given full recognition because we take the total costs of additions which necessarily include the overheads that went along with them."

The foregoing finding of the Commission is complained of by the water company, but we think the facts and the reasons upon which that finding is based are set forth in substantial compliance with the Con-

stitution, and we do not perceive any reason why we may not say upon our own judgment as well as upon the *prima facie* presumption of correctness which we must accord thereto, that the action of the Commission in this particular is just and reasonable.

5. Under the head of "Accrued Depreciation," the Commission says:

"The Supreme Court of Appeals in the *Petersburg Gas Case, supra,* suggested the deduction of 'observed depreciation.' This we have followed so far as practical, recognizing that there are very large elements of property, especially so in water works, in which the depreciation is not observable and must be estimated. A study of the lives of various elements of the property, as worked out by Mr. Maury in the 1920 case, would indicate a probable average life of the property at seventy years, making a probable average age of seventeen and five-tenths years. The percentage of expired life would therefore be twenty-five and nineteen one-hundredths. On a four per cent. sinking fund basis the total gross depreciation would be $141,190.00, to be deducted from the value of depreciable property. This is subject to credits for restoration of depreciated property out of depreciation reserve, which amounted during 1920 and 1921 to $14,992.00; depreciated one per cent., or $149.00, leaves $14,842.00 net restorations. Deducting this from the total gross depreciation of $141,190.00 we have a net depreciation of $126,348.00."

The comments which we have made last above with reference to "Other Items of Value" equally apply here. Indeed, we do not perceive any reason why the company should complain of the Commission's allowance for depreciation because the Company's representative, Mr. Moore, testified that the amount should be somewhat larger, to-wit, $129,764.00.

[11] 6. Under the head of "Going Value" the Commission says:

"The company estimated the going concern value at ten per cent. of the value of the tangible property, not including real estate, water rights, tools, supplies or equipment, amounting to $114,881.00. This intangible element has been much discussed. Roughly speaking, it represents the suppositious difference a possible customer might pay for a property over and above the physical value, by reason of the existence of customers and contracts, which cost money to secure. The United States Supreme Court, in the case of *Galveston Light Co.* v. *City of Galveston*, indicated that the measure of going concern value, if allowed, depends upon the history of the utility. From that viewpoint, the Commission believes that $60,000.00 is a fair value in this instance."

We have difficulty with this item. The board of appraisers appointed by the company and the city in 1913 fixed the going value at that time as $163,500.00. Mr. Maury, who was the city's representative in that appraisement, testified that while he agreed to the above figures in the report which was made by the board, he nevertheless thought the going value in 1913 should have been fixed by the board at about $120,-000.00, and when the Commission rendered its opinion in this case in April, 1920, it said that "in the matter of going value we are also inclined to accept Mr. Maury's revised estimate, which is a substantial subtraction from the value found in 1913." We do not find anything in the opinion of the Commission or in the record which ought to reduce the going value below that advocated by Mr. Maury in the appraisal in 1913, except the conclusive fact that the company upon the last hearing contended for a going value of $114,881.00 in accordance with the testimony of their engineer. It is true that

every one of these valuations of this item depended upon opinion, if not upon conjecture, but as the record stands, we are unable to approve the action of the Commission in fixing the going value of the concern at the price of $60,000.00. This item of going value is one which, as the Commission says, has been very much discussed, and, as is true of nearly every other item that enters into the valuation of property of public service corporations for rate making purposes, no standard measure has ever been fixed therefor. Plausible arguments have often been made against any allowance for this item, and such arguments apply perhaps with particular force to water companies, which are dealing with a necessity and do not have to make any particular effort to sell their product; but the Commission has allowed the item in this case, and we do not find any fact found, or any reason given, to support the figure which it has adopted. It is true the Commission says it views this item from the standpoint of the "history of the utility," but we are not told what there is in the history of the utility to affect this value. The Commission in its opinion in this case, in April, 1920, said: "We calculate the returns solely upon the fair value of the company's property used and usable for the purpose of furnishing water to the people of the city of Roanoke," and it has evidently followed the same general rule on the second hearing. A good deal was said about the stocks and bonds of the company in both opinions, and a great deal was also said, particularly in the second opinion, about the financial management of the company, but no fact is found and no reason stated with reference to "the history of the utility" from which we can form any guess as to what the Commission really regarded as the reason for cutting down the item of going value to an amount so much smaller than the sum which

is apparently warranted by the evidence. We do not undertake to settle this question finally, but leave it open to adjudication if the case should come back to us with a statement of facts and reasons upon which the action of the Commission is based. We will add, however, that as the record now stands, it seems that this item ought to have been fixed at not less than $114,-881.00.

[12] 7. With respect to the items of "Working Capital and Supplies," and "Deficiency in Earnings," we think the Commission has sufficiently certified the facts and stated the reasons for its action, and we find no reason to differ from its conclusions in these respects. We quote from the opinion of the Commission as to these items as follows:

"7. In this case the company claimed a valuation of $25,000.00 for tools, supplies and equipment. This was estimated on the basis of cast iron pipe for two city blocks, one carload of pipe of six and eight inches, fittings, one of each for emergencies, lead tapping machines, wrenches, dies, etc., service fittings, one month's supply, typewriter desk, chairs, etc.

"The company further claimed an allowance for cash working capital of $15,000.00 to cover operations between the time of rendering service and the time of collection of the bills. We have no doubt that current supplies are paid for, and that salaries and wages are paid at the end of the month and not in advance, and it would further seem that for a company of this size the estimated amount of supplies necessary to keep on hand is large. The Commission is of the opinion that the sum of $25,000.00 is sufficient allowance in the valuation for working capital and supplies.

"8. The company claims that it should be allowed to recover by amortization through rates charged to con-

sumers, losses incurred short of a fair return and allowance for depreciation during the years 1920 and 1921, on such value as should have been found by the Commission in the 1920 proceedings, in the light of the subsequent decision of the Supreme Court of Appeals in the *Petersburg Gas Case.*

"In the decision of 1920, the Commission used the full amount estimated by the company as its future operating expenses, which was a sum in excess of these expenses in any preceding year. The operating costs proved to be substantially greater than the estimate advanced by the company and allowed by the Commission. The earnings turned out to be larger than those estimated by the Commission, and had the company's idea of the cost of its operations been correct, an ample return would have been earned on the valuation then fixed by the Commission. It is true that the company filed a motion for rehearing shortly after the decision, but the motion was continued generally at the suggestion of the company, and deficiency in earnings due to increased operating expenses was not brought to the attention of the Commission until the hearings of 1922. It was a mistake of the company, and we do not conceive it to be the function of the Commission to scrutinize monthly the books of the hundreds of public utilities in Virginia, to ascertain how they are getting along financially. In this view of the situation, we hold the company is not entitled to recover losses due to operating expenses in excess of those used in the 1920 case.

"Deficiency in earnings because of a valuation since found in principle to be too low, is another matter. This was the Commission's mistake, says the Supreme Court of Appeals. The return to which the company was entitled by reason of the appreciation on pre-war property now allowed in this case, and which the rates as pre-

scribed by the Commission did not permit it to earn, amounted to $18,340.00. For the immediate purpose of this decision this may now be added to the valuation of the property, and it will be noted that the estimated net earnings at present rates are now somewhat in excess of a fair return."

[13, 14] Upon the valuation of $1,472,026.00, as finally fixed by the Commission, the rates prescribed by it allowed a return of seven per cent., with a depreciation reserve of one and two-tenths per cent. Complaint is made of this rate or return as being too small, but if the valuation is fair, we cannot interfere with the judgment of the Commission in this respect. The evidence shows that utility companies cannot at this time obtain money at this rate, but a net return of seven per cent. upon the investment as a whole, based upon a valuation which represents a material appreciation over original cost, cannot be said to be unfair, and is usually held to be just and reasonable.

The facts and the reasons upon which the Commission based its action as to (1) the appreciation of values over pre-war unit prices, (2) water rights, and (3) going value, have not been stated in such manner as would justify this court in presuming *prima facie* that the findings of the Commission are correct, and it would be unfair to the Commission not to make the presumption until the matter has been brought to its attention, and it has been allowed the opportunity to certify to this court the facts and reasons required by section 156-f of the Constitution. It may be also that the Commission may desire to hear further testimony on the above questions, and if so an opportunity therefor should be afforded. The court appreciates the difficulties confronting the Commission, and wishes to aid it rather than obstruct in its difficult task, and hence has pointed out the

questions for consideration before finally passing on the results of its deliberations.

The case will accordingly be remanded to the Commission for further action. In the meantime the appeal will be considered as still pending and no order as to costs will be entered. *Appalachian Power Co.* v. *Commonwealth*, 132 Va. 1, 110 S. E. 360.

*Remanded for further proceedings.*