## Staunton.

## ROANOKE WATER WORKS COMPANY v. COMMON-WEALTH OF VIRGINIA.

### September 18, 1924.

1. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Present Value Theory—Case at Bar.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, the action of the Commission in fixing upon the appreciation of the property value over pre-war prices at forty per cent, instead of the twenty per cent fixed upon by the Commission prior to a former appeal, has, in result, and from sufficient findings of fact as substantially stated, given due consideration to the "present value theory" (which includes due consideration of reproduction value) in conformity with the opinion of the Supreme Court of Appeals rendered upon the former appeal; which theory, as stated in that decision, must be considered as "one which must control the decision in this case;" and hence there was no error in such action.

2. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Valuation of Water Rights—Cost of Substituted Water Supply.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, there was no error in the action of Commission in rejecting the cost of substituted water supply theory of the water company as decisive of the value of the water rights of the company.

3. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Going Concern Value.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company at arriving at the "going concern value," the Commission did not err in its decision that the apparent poor management of the water company should affect the "going concern value," and upon the testimony did not err in fixing that value.

4. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Date of Valuation.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, if there had been a sub-

stantial omission of property from a valuation made prior to a former appeal, which should have been included in the last valuation under principles applicable to the case as settled by the conclusions of the Supreme Court of Appeals on the present and former appeals, the proper value of such property should be added to the total property value found by the Commission.

5.  PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Date of Valuation—Case at Bar.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, the Commission erred in undertaking to fix the rate as of March 21, 1924. It should have fixed the rate as of January 1, 1922, as it was only as of that date that it fixed upon the value of the property of the water company. A property valuation as of the latter date could not properly furnish the basis for fixing the rate as of a date so long subsequent as the former date.

6.  PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Date of Valuation—Case at Bar.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, upon a former appeal the Supreme Court of Appeals remanded the case to the Commission for a statement of the facts and reasons upon which the Commission based its action as to the appreciation of values, value of water rights and going value.

    *Held:* That it was not the intention of the Court of Appeals to limit the inquiry to the three questions mentioned, but that the practical question involved was the right of the company to show the real value of the property for rate making purposes.

7.  PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Inequitable Valuation.*—To base a rate upon an inequitable valuation would amount to a confiscation of property.

8.  CONSTITUTIONAL LAW—*Taking of Private Property.*—Both the State and Federal Constitutions forbid the taking of private property for public use without making just compensation therefor, and the common law forbids the taking of private property of one person and giving it to another, with or without just compensation.

9.  PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Inequitable Valuation.*—If a rate should be fixed either by the State Corporation Commission or by the Supreme Court of Appeals, based upon an insufficient valuation, the same would be illegal. The company is entitled to have its products sold to the users thereof so as to yield it fair return upon the reasonable value of the property at the time it is being used for the public. On the other hand, what the consumer of water is entitled to is a just value and not a fictitious one

based upon fine-spun theories as to what enters into the valuation of the plant.

10. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Valuation of Property—Remand to Corporation Commission—Case at Bar.*— In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, the case was remanded to the Corporation Commission to decide upon what should be added to the value of the property of the water company, if anything, on account of items alleged to have been omitted from the valuation. The condition of the record not justifying the Supreme Court of Appeals to decide upon these items and fix the rate itself and enter a final decree in the cause.

11. PUBLIC SERVICE AND CORPORATION COMMISSIONS—*Rate Fixing—Appeals—Costs.*—In the instant case, an appeal from the action of the State Corporation Commission in fixing water rates to be charged by a water company, the case was reversed in part and remanded and the water company having substantially prevailed in its contention as to rates, was awarded its costs in this behalf expended.

Appeal from an order of the State Corporation Commission.

*Reversed and remanded.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the appellant.

*R. C. Jackson* and *W. J. Henson,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

This is a case involving two appeals from the action of the State Corporation Commission fixing the water rates to be charged the inhabitants of the city of Roanoke by the water company.

The questions involved in the first appeal were before this court on an appeal granted February 28, 1923.

On September 20, 1923, Kelly, P., delivered the

opinion of the court affirming the action of the Commission in part, and remanding the case to the Commission to state, as provided by section 156-f of the Constitution, "the facts and reasons upon which the Commission based its action as to (1) the appreciation of values over pre-war unit prices, (2) water rights, and (3) going value," and retained the case on the docket of this court.

In this decision, which is reported in 137 Va. 348, 119 S. E. 268, the learned judge deals most elaborately with the questions of "valuation for rate making purposes;" "water and water works;" "rate fixing;" "valuation;" "present value theory;" "weight to be given to Commission's decisions on appeal;" "valuation of property;" "cost of obtaining a substitute supply;" "reasonableness of return of seven per cent on investment;" "prudent investment theory;" "appreciation and depreciation;" "valuation based on reproduction or replacement of plant;" "water rights value;" "other items of value;" "accrued depreciation;" "going value;" "working capital and supplies;" "deficiency in earnings" and "pre-war unit prices."    After so masterful a discussion of these most complex questions by the distinguished former president of this court (Judge Kelly, resigned January, 1924), a further discussion thereof on our part would be "an affectation of erudition."

In obedience to the remand order of this court, the Corporation Commission, on the twenty-first day of March, 1924, after having heard evidence upon the three questions stated, *supra*, certified to the Supreme Court of Appeals the facts and evidence upon which the action of the Commission in the said proceeding

was. based, together with its opinion, which is as follows:

"Facts and reasons in pursuance of section 156-f of the Constitution of Virginia and the conclusions of the Commission under the order of the Supreme Court of Appeals entered September 20, 1923, remanding the case for further proceedings.

"To the Supreme Court of Appeals:

"The Commission, in its opinion of August 31, 1922, in concluding the discussion of the value of the water rights of the Roanoke Water Works Company, summarized the situation as follows:

" 'From all authorities the determination of the amount of water rights value is stated to be a matter of judgment. The Commission takes as a basis the cost of purifying the amount of water used during the year 1921, which, capitalized at nine per cent, gives a valuation of $199,540.00. Accordingly we allow a valuation of $200,000.00 for the water rights.'

"The Supreme Court of Appeals in remanding the case quoted the above paragraph, and said:

" 'It is clear from the concluding portion of this extract from the opinion that the Commission has made no allowance for pumping equipment installed since the 1913 appraisement, and none on account of the fact that since that appraisement conditions have arisen which would make a substitute supply from Roanoke river cost much more than it would have cost at that time. The appraisers in 1913 adopted the cost of such substitution as the measure of value. The effect of what the Commission has done, as we understand it, is to adopt the same measure of value which the appraisers adopted in 1913, but without making any allowance for changed conditions.'

"It is evident that the Supreme Court understood

that Commission based its valuation on the full cost of a substitute supply from Roanoke river, since it said:

" 'So far as we are able to understand, the Commission, in effect, has adopted as the measure of value of the water rights the cost of purifying the water.'

"On the contrary, the Commission meant by the expression 'cost of purifying' to include only the operating expenses of a substitute filtration plant and not the fixed charges connected therewith and included in the appraisal of 1913, made by Mr. Maury. The Commission used a basis of $9.80 per M. for this purpose and arrived at an operating expense amounting to $15,963.00 for 1,626,000 M. gallons, the 1921 usage. Capitalizing this at eight per cent, the Commission arrived at a valuation of $199,540.00 and allowed a value to water rights amounting to $200,000.00.

"Since the 1922 hearing, the water company has filed exhibits showing detailed analyses of water taken from Roanoke river and the operating expenses of a filtration plant based upon these analyses of $12.60 per M. gallons, including taxes. We think these figures should be accepted as correct, and used in place of the $9.80 used by the Commission in its opinion of August 31, 1922.

"Upon the basis of these figures and the Commission's memorandum the value of the water rights will be found as follows:    1,626,000 M. gallons x $12.60 equals $20,488.00, which, capitalized at eight per cent, gives $256,100.00.

"While the Supreme Court understood the Commission in its former opinion 'adopted as a measure of value of the water rights the cost of purifying (operating expenses and fixed charges included) the water,' it added:

" 'We do not perceive any reason for adopting this

method, except that the appraisers in 1913 adopted it in order to determine what a substitute supply from the Roanoke river would cost.'

"The board of appraisers, in 1913, allowed a valuation of $200,000.00 for water rights (page 17, appraisers' report), arrived at as follows:

| Description | Annual Yield Mil. Gal. | Value per Mil. Gal. | Total Annual Val. | Annual Value Capitalized at 8% or Water Rights Val. |
|---|---|---|---|---|
| Crystal Spring | 1,460 | $9.00 | $13,140 | $164,250 |
| Muse Spring | 474 | 5.00 | 2,370 | 29,625 |
| River Spring | 217 | 2.50 | 535 | 6,687 |
| | | | | $200,562 |

"Accordingly the appraisers find the aggregate value of the water rights of the Crystal, Muse and River Springs to be, in round numbers, $200,000.00.

"In 1920, Dabney H. Maury, the company's witness, who was a member of the board of appraisers in 1913, stated that in his opinion the 1913 value should have been $140,000.00, and increased this amount by seventy per cent to give $238,000.00 as the average value during the five years ending March 1, 1920. In 1922 this value was increased by company's witness Moore to $593,487.00, due to the necessity having arisen, the company claimed, of having to secure this water from the Roanoke river at a point above Salem.

"Since the 1922 hearing the company has further increased this claim to $1,522,253.00, the increase being caused by a corrected estimate as to the cost of a substitute supply from a point above Salem.

"While the company's claim depends upon the necessity of securing the substitute supply from the Roanoke

river at a point above Salem, and upon the proof that the supply described by the exhibits would constitute the cheapest substitute, it appears that the project as proposed shows 'insufficient consideration to the fact that a water supply works located on_____the Roanoke river would entail a design of a distribution system, reservoirs and water supply works different from those of the present water works, when furnishing substantially an identical water service throughout the city, and that when thus worked out would give different values for comparison and would lead to different results' than those submitted by the company. This was the view held by the appraisers in 1913 relative to this method (see page 15).   Furthermore, no consideration is given to the fact that any plant located at Salem would almost certainly supply other consumers than those in the city of Roanoke.   Thus, the substitute supply urged by the company has not been definitely proved to be the cheapest one.

"But for the purpose of argument such a method will be considered the cheapest, and therefore, if sound, the correct basis for the valuation of the water rights.

"The facts are that the springs of the company have an estimated flow of 2,151,000 M. gallons annually, of which amount, when last reported, the annual usage was approximately 1,626,000 M. gallons.   It appears proper that any method based upon a capitalized savings calculation should capitalize the savings actually effected from year to year to give the valuation sought.   Otherwise, the savings calculated by using the full flow of the springs might far exceed the cost of providing from a more expensive substitute supply the amount of water actually necessary at a given time. Therefore the capitalized savings method, if used here, should be based on 1,626,000 M. gallons, or at the

last reported annual usage, which is in line with the decision of the Commission in the *Virginia Railway and Power Company Case*, No. 1138, P. U. R. 1922 D, p. 352.

"This Commission, however, has never approved the theory of capitalizing in favor of the company the total savings actually achieved by taking the water from springs or generating power by water instead of steam. See *Va. R. & P. Co. Case, supra.* In this case the Commission allowed a valuation of lands and water rights of $750,000.00 which it is said 'approximately divides the net savings between the company and the public.' This division was deemed advisable in order to encourage the development of the State's hydro resources, which necessitate much larger initial construction expenditures, involve greater subsequent risks than the development of power by the substitute method of steam generation. These elements are not present to the same degree in the present case where the natural resources used make possible a supply cheaper from an initial investment standpoint than the proposed substitute and involve little risks after development. In both the *Va. Ry. & P. Co. Case* and the present case, the Commission held 'the company is entitled to benefit in valuation for its foresight and risk in acquiring the water rights, and the public is entitled to benefit in lower rates than would otherwise be necessary because of its proximity to the water supply.

"The policy of the Commission is upheld, practically without exception, by a large number of cases which will be quoted below. In a number of these cases the water rights valued are those relating to hydro-electric developments as distinguished from springs. The capitalized savings method considered is, how-

·ever, the method urged in the present case, and the principle of valuation and the arguments thereon apply ·similarly to springs, except as may be modified by the lower first cost and risk which usually attend a spring's ·development.

"The Oregon Commission rejects the capitalized ·savings method of determining the fair value of water ·rights on the basis of being unsound in principle, in its order No. 211 of July 16, 1917, in the *Case of Cali-fornia-Oregon Power Company*, reading as follows:

" 'On the question of the value of water rights at the Oregon plant, the company has presented elaborate ·computations showing the estimated saving in cost of ·service which might be accomplished by the present hydro-electric operation, as compared with the opera-·tion of theoretical steam plants designed to produce an equivalent amount of power. These estimated savings have been capitalized to give theoretical values ·for the different rights, aggregating $2,115,205.00.

" 'This theory, with slight changes in detail occasion-·ed by local conditions, has often been advanced in this behalf. As an exact measure of the value of such ·property, it is not entitled to consideration; and, at best, assuming that the fundamental principles are correct, the theory as developed can indicate only the ·maximum value that might be claimed for the right in question.

" 'Furthermore, the value derived from such com-putations differ so widely upon small changes in the variable elements introduced, such as the assumed cost of capital, cost of fuel, and the freight rate, that their consideration is justified only for the general informa-tion which they may contain.

" 'In addition to the water power rights, the company also owns, in Klamath Falls, a large spring which has

been developed to furnish water for domestic, commercial, and municipal purposes in that city.

" 'As evidence of the value of this water right, the company introduced computations designed to show the annual saving which might result from the use of this source of supply over the cost of similar service from what was claimed to be the next available source, a stream approximately forty-five miles distant from the city. The saving thus estimated when capitalized amounted to $2,200,266.00.

" 'This calculation affords a splendid demonstration of the absurd results which may be obtained by the application of this familiar theory. At the date of this calculation, the utility had 832 customers from a total population of approximately 5,000. The interest alone on the above capitalization would be $227.19 per year for each customer.

" 'Furthermore, this Commission cannot concede that any theory in connection with the valuation of water rights *of* (for) either power or domestic purposes is sound in principle which permits an individual, or group of individuals, to capitalize without limit a natural resource, and thus virtually deprive a community of all advantages from its proximity thereto.

" 'In its capacity as a regulatory body, this Commission has had numerous computations submitted and theories advanced as to the value of water rights, many of them without equitable or practicable foundations. Under our present enlightenment it is apparent that the determination of water rights values, at least for the purpose in which this Commission is interested, must rest upon the exercise of reasonable judgment and discretion in the consideration of all elements relevant thereto. If there have been sales of fairly comparable water rights, sufficient in number and under

such circumstances as to establish fair market values therefor, we are impressed with the idea that this feature should receive serious and earnest attention. Artificial rules and formulae may produce figures which are of assistance in arriving at a fair and reasonable value, but, segregated to themselves and standing alone, are of little consequence.

" 'In the present case no showing as to market value has been made; and, in accord with the views expressed, the Commission has found a value of these rights, which it believes to be fair and equitable.'

"In the *Roanoke Case* the allowance of the water rights value claimed would require an annual interest charge, at seven per cent, of $106,558.00, an amount greater than the total operating expenses and taxes of the company during its largest year's operations. This value would call for approximately $10.00 annually per customer for interest on water rights value, aside from interest and depreciation charges on the plant value and the cost of operating the plant itself.

"A clear statement of the same method as being contrary to any reasonable public policy is given by the Idaho Commission in *Peterson* v. *Washington Water Power Company*, Case No. F-54, order No. 504, in which the Commission said, in discussing the savings over steam method of valuing water rights:

" 'One feature of the "saving over coal" method of determining the value of a water right should not escape attention.   We live in a region remote from the coal fields, the cost of transportation is heavy, and the price of coal is higher than in almost any other part of the country.   On the other hand, ours is a mountainous State, with many streams having large fall and furnishing an abundance of water power, much of which is still undeveloped.   If we adopt the policy of

valuing water power in rate and capitalization cases by capitalizing their "saving over coal," the people of this State are left subject to all the disadvantages attendant upon the remoteness from the coal mines, while enjoying no advantage from living in a region abundantly supplied with water powers. A "fair value" of a water power in Idaho cannot be a value which takes no account of our natural resources, and makes electricity produced by water as expensive to the public as if produced by coal.'

"See also: *Pacific Gas & Electric Company* (Cal.), P. U. R. 1923-C, pp. 413-416; *Ocean County Electric Co.* (N. J.), P. U. R. 1916-D, pp. 79-80; *Pacific Power & Light Co.* (Wash.), P. U. R. 1916-B, p. 93; *Montgomery Hydro Electric Co.* (Ill.), P. U. R. 1917-C, p. 232; *San Joaquin Light & Power Corp.* (Cal.), P. U. R. 1922-D, pp. 610-611; *Franklin Light & Power Co.* (N. H.), P. U. R. 1922-A, p. 512; *Montpelier & B. Light & Power Co.* (Vt.), P. U. R. 1916-B, p. 973; *Burkhardt Mill & Electric Power Co.* (Wis.), 5 Wis. R. C. R. 147; *Utah Power & Light Co.* (Utah), P. U. R. 1923-B, p. 16.

"Practically all decisions hold that the capitalized savings method gives, at best, a valuation useful only as indicating the maximum amount allowable.

"*Sou. Nebraska Power Co.* (Neb.), P. U. R. 1921-C, p. 700; *Illinois Northern Utilities Co.* (Ill.), P. U. R. 1919-E, pp. 947-951; *Big Falls Power Co.* (Wis.), P. U. R. 1918-D, p. 234; *Alabama Power Co.* (Ala.), P. U. R. 1923-B, p. 40; *Indianapolis Water Co.* (Ind.), P. U. R. 1923-D, p. 511.

"Some decisions hold the market value as the correct basis when such market value is determinable from known sales of similar water rights under like conditions. See *Montgomery Hydro Electric Co.* (Ill.), P. U. R.

1917-C, p. 232; *California Oregon Power Co.*, P. U. R.
1918-C, pp. 253-255.

"Other decisions hold the investment cost as the
proper basis. See *Bluefield Water Works and Improve-
ment Co.* (W. Va.), P. U. R. 1921-E, pp. 664-665;
*Boston and Idaho Dredging Co.* (Idaho), P. U. R. 1921-E,
p. 846.

"Practically all discussions on this question hold
that the amount allowed for water rights must be left
to the best judgment of the regulatory body based
upon consideration of the conditions of each case.
See *Sou. Nebraska Power Co.* (Neb.), P. U. R. 1921-C,
p. 678; *Sou. Indiana Power Co.* (Ind.), P. U. R.
1921-C, p. 255; *New York State Gas and Electric Co.*
(N. Y.), P. U. R. 1921-A, p. 669; *Springfield City
Water Co.* (Mo.), 1919-D, P. U. R., pp. 869-876;
*Utah Power & Light Co.* (Utah), P. U. R. 1923-B, p. 18.

"The record shows that $250,000.00 was paid in
1887 for the water rights of the company along with a
large amount of land, improvements, franchises and
equipment. The Commission does not consider that
the cost of a substitute supply project at a point above
Salem, as presented by the company, was proved the
cheapest substitute supply possible. However, the
Commission has given this consideration along with
the risk and development cost, pending the use of
these springs. The Commission believed that the city
of Roanoke should benefit by its proximity to its
natural resources, as well as the utility through its
ownership of such resources. And, in arriving at such
a decision, believed the Roanoke Water Works Com-
pany should have its water rights valued upon the
capitalized 'out of pocket' operating expenses of filter-
ing the amount of water used from the springs and
withheld requiring from the city of Roanoke fixed

charges on a substitute purification plant until such a plant becomes actually necessary.

## "*Appreciation of Pre-war Property Value.*

"In the present case, as in others, the Commission began with the pre-war property at pre-war unit reproduction prices and appreciated this pre-war value twenty per cent. All war time and post-war additions were included at estimated or actual cost. The Supreme Court says:

" 'We are unable, from any facts found by the Commission, to understand why only twenty per cent appreciation was allowed upon pre-war prices. The evidence seems to us to show without conflict that prices had increased at the time of the valuation at least seventy per cent, and there was a liberal deduction by the Commission on account of depreciation. We do not think any reason is assigned by the Commission for allowing so small an amount on account of increased cost. It is true that, in the general discussion which we have quoted from the opinion, the Commission refers, at least indirectly, to the settled rule that present replacement cost is not controlling in fixing the rate base, and while it may be true, as a matter of fact, that the Commission did take into consideration elements which were proper to be considered in reaching what, of course, is believed to be a just and reasonable allowance for appreciation, the fact remains that the Commission did not certify to us the facts upon which it adopted twenty per cent as the amount to be allowed for appreciation, or the reason which guided it in that particular. As the matter appears to us at this time upon the record it seems that this allowance for appreciation is too small in view of the

evidence, and that "proper consideration" has not been given to replacement cost.   At any rate, we feel that the case as to this item must be remanded to the Commission for further consideration and report in accordance with the course which was taken in the case of *Appalachian Power Company* v. *Commonwealth,. supra.'*

"As stated by the Commission and confirmed by the Supreme Court of Appeals, recognition was given to the 'settled rule that present replacement cost is not controlling in fixing the rate base.'   See *Galveston Electric Co.* v. *City of Galveston*, 258 U. S. 388, 42 Sup. Ct. 351, 66 L. Ed. 678, in which thirty-three and one-third per cent appreciation was used in fixing rate base, although actual prices had risen to 110 per cent at time of hearing; *Southern Bell Tel. Co.* v. *Public Service Commission of Missouri*, 262 U. S. 276, 43 Sup. Ct. 544, 67 L. Ed. 981, in which a valuation of not less than $25,000,000.00 was indicated as necessary by the Supreme Court where the evidence showed actual cost of $22,888,943.00; reproduction cost new of $35,100,868.-00; reproduction cost new less depreciation $31,333,673.-00 (at prices June 30, 1919), the Commission having allowed a valuation of $20,500,000.00 in the order under appeal.

"In the *Georgia Railway and Power Company* v. *Railroad Commission of Georgia*, 262 U. S. 625, 43 Sup. Ct. 680, 67 L. Ed. 1144, the court said:

" 'First.   The objections mainly urged relate to the rate base; and one of them is of fundamental importance.   The companies assert that the rule to be applied in valuing the physical property of a utility is reproduction cost at the time of the inquiry less depreciation.   The 1921 construction costs were about seventy per cent higher than those of 1914, and earlier

dates when most of the plant was installed. So much of it as was in existence January 1, 1914, was valued at an amount which was substantially its actual cost or its reproduction cost as of that date. The companies claim that it should have been valued at its replacement cost in November, 1921—the time of the rate inquiry; and that the increase in construction costs was ignored in determining the rate base.

" 'The case is unlike *Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission* (No. 158, 262 U. S. 625, 43 Sup. Ct. 680, 67 L. Ed. 1144, decided May 21, 1923.) Here the Commission gave careful consideration to the cost of reproduction; but it refused to adopt reproduction cost as the measure of value. It declared that the exercise of a reasonable judgment as to the present "fair value" required some consideration of reproduction costs as well as of original costs, but that "present fair value" is not synonymous with "present replacement cost," particularly under abnormal conditions. That part of the rule which declares the utility entitled to the benefit of increases in the value of the property was, however, specifically applied in the allowance of $125,000.00 made by the Commission to represent the appreciation in the value of the land owned. The lower court recognized that it must exercise an independent judgment in passing upon the evidence; and it gave careful consideration to the replacement cost. But it likewise held that there was no rule which required that in valuing the physical property there must be "slavish adherence to cost of reproduction, less depreciation." It discussed the fact that since 1914 large sums had been expended annually on the plant; that part of this additional construction had been made at prices higher than those which pre-

vailed at the time of the rate hearing; and it concluded that "averaging results and remembering that values are * * matters of opinion * * no constitutional wrong clearly appears."

" 'The refusal of the Commission and of the lower court to hold that, for rate making purposes, the physical properties of a utility must be valued at the replacement cost, less depreciation, was clearly correct. As was said in *Minnesota Rate Cases*, 230 U. S. 352, 434:

" 'The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts."

" 'What these relevant facts are had been stated in *Smyth* v. *Ames*, 169 U. S. 466, 546-547:

" ' ' * * The original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stocks, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, that which the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

" 'And in *Willcox* v. *Consolidated Gas Company*, 212 U. S. 19, 52, it has been made clear—

6

" ' "that the value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property which legally enters into the consideration of the question of rates has increased in value since it was acquired, the company is entitled to the benefit of such increase."

" 'The rule laid down in these cases was expressly recognized as controlling, both by the Commission and by the lower court. Evidence bearing on most of the facts there declared to be relevant facts was before them. The court states, and the record establishes, that "the opinion of the    *    *    Commission    *    * evinces a full and conscientious consideration of the evidence. The opinion of the court shows that it also made careful examination of the evidence submitted and that it recognized the applicable rules of law. While it differed from the Commission in some matter of detail, it sustained the latter's findings that the value was $5,250,000.00. The question on which this court divided in the *Southwestern Bell Telephone Case, supra,* is not involved here.'

"In the case of *Bluefield Waterworks and Improvement Co.* v. *Public Service Commission of West Virginia,* 262 U. S. 679, 43 Sup. Ct. 675, 67 L. Ed. 1176:

" 'It was shown that the prices prevailing in 1920 were nearly double those in 1915 and pre-war time. The company did not claim value as high as its estimate of cost of construction in 1920. Its valuation engineer testified in his opinion the value of the property was $900,000.00—a figure between the cost of construction in 1915 and before the war, less depreciation.

" 'The record clearly shows that the Commission in arriving at its final figure did not accord proper, if any, weight to the greatly enhanced cost of construction in 1920 over those prevailing about 1915, and before the

war, as established by uncontradicted evidence; and the company's detailed estimate cost of reproduction new, less depreciation, at 1920 prices, appears to have been wholly disregarded. This was erroneous. *Missouri ex rel. Southwestern Bell Telephone Company* v. *Public Service Commission of Missouri*, 262 U. S. 276, 43 Sup. Ct. 544, 67 L. Ed. 981, decided May 21, 1923. Plaintiff in error is entitled under the due process clause of the fourteenth amendment to the independent judgment of the court as to both law and facts. *Ohio Valley Co.* v. *Ben Avon Borough*, 253 U. S. 287-289, 40 Sup. Ct. 527, 64 L. Ed. 908, and cases cited.

" 'It is clear that the court also failed to give proper consideration to the higher cost of construction in 1920 over that in 1915, and before the war, and failed to give weight to cost of reproduction, less depreciation, on the basis of 1920 prices, or to the testimony of the company's valuation engineer, based on present and past costs of construction, that the property, in his opinion, was worth $900,000.00. The final figure, $460,000.00, was arrived at substantially on the basis of actual cost, less depreciation, plus ten per cent for going value and $10,000.00 for working capital. This resulted in a valuation considerably and materially less than would have been reached by a fair and just consideration of all the facts. The valuation cannot be sustained. Other objections to the valuation need not be considered.'

"The basis of the appreciation used was the method described and employed in the *Virginia Railway and Power Company Case*, *supra* (P. U. R. 1921-C, p. 207, par. 1), reading as follows:

" 'To the probable fair 1914 reproduction value may reasonably be added a normal appreciation for the years since that time. Had there been no war, there

would have been a gradual rise in prices due to increasing costs of production. Thus, we have a basis which allows the company the benefit of appreciating values in normal times, based on pre-war values plus actual additions made at war prices.'

"In the present case the Commission employed two per cent as representing the normal annual appreciation of the water plant during the years prior to the war and applied this percentage to give twenty per cent appreciation over the pre-war property since the war, with allowance of actual cost of all war time and post-war property.

"The percentage employed for annual advance in prices was derived, as in case of the *Lynchburg Traction & Light Company*, P. U. R. 1921-E, p. 92, from the annual advance in prices in the years between 1900 and 1915 as published by the United States Department of Labor in its bulletin Whole Number 200.

"At the time of the last hearing Mr. H. P. Gillette, witness for the company, testified that, in his opinion, the prices of January, 1922, would be fully 100 per cent higher than those during the five years ended 1913.

"In view of the weight which it appears the Supreme Court has accorded present reproduction cost in these cases where testimony indicated present prices from sixty to 100 per cent above the pre-war prices, the Commission is of opinion that not less than forty per cent appreciation of the value of the pre-war property should be allowed in this case.

### "*Going Concern Value.*

'The prevailing reasons which were in view in arriving at the $60,000.00 allowance for going concern value, were that the proper interpretation of the

Galveston Electric Company decision seemed to be that large going concern allowances were made unnecessary by that decision, and that the apparently poor management of the water company in Roanoke during its past history should affect the going concern value, inasmuch as it would lessen the amount which a purchaser would pay for the property over and above its physical value.

"At the last hearing the company's witness testified that the going concern value, in his opinion, should be not less than twenty per cent of the present value of the property, exclusive of water rights. This final testimony gives evidence as to going concern value ranging from ten to twenty per cent, all by the company's witnesses. Under the circumstances there should be an allowance of not less than $114,881.00, particularly in view of the Supreme Court's reference to this feature in its concluding paragraph on this element of value.

"The allowance of the percentages mentioned above will cause necessity for an increase in rates above those allowed by the Commission in the order under appeal. A calculation based on the foregoing facts and reasons, and applying the conclusions resulting therefrom, gives a valuation for ratemaking purposes of one million seven hundred eighty-six thousand three hundred and fifty-eight ($1,786,358.00) dollars as of January 1, 1922, and makes necessary an increase of approximately twenty-five thousand seven hundred seventy-five ($25,775.00) dollars in annual revenue over that authorized by the Commission in its order of August 31, 1922. These conclusions appear to the Commission, under all the circumstances and in the light of the evidence at both the original and supplementary hearings, to be right and proper, and according to the Commission's best judgment. An order will be en-

tered putting into effect the conclusions reached herein and certifying the foregoing facts and reasons, together with the evidence taken at the supplementary hearing in this matter.''

In addition to the action taken in regard to the first appeal, the Commission entered the following order:

"This case came to be again heard on the order of the Supreme Court of Appeals remanding the case for further proceedings before the State Corporation Commission of Virginia, on the evidence introduced at the original hearing and on the additional evidence taken upon the rehearing, and was argued by counsel.

"Upon consideration whereof the State Corporation Commission being of opinion, upon the statement of facts and reasons and the opinion this day rendered and filed with the papers in these proceedings and made a part of the record, and upon the original and supplementary evidence, that the conclusions reached on the original hearing should be modified in accordance with the said facts, reasons and opinion, and as hereinafter appears, that is, the value of the used and useful property of the Roanoke Water Works Company on January 1, 1922, is $1,786,358.00, thus requiring an increase in annual revenue of approximately $25,775.00:

"It is ordered that the Roanoke Water Works Company file with the State Corporation Commission a revised schedule of rates and charges so as to produce said increase in revenue over rates authorized in the order of this Commission entered on August 31, 1922; and,

"It is further ordered, that the Roanoke Water Works Company refund to its consumers the several sums of money arising out of the difference between the

rates and charges hereby authorized and those charged since March 1, 1923; * * *"

It is this order which is the subject of the second appeal.

To the report of the Commission dealing with the matters remanded to it on the first appeal the water company files eleven exceptions.

A number of these exceptions deal with questions which have been disposed of by the decision in the former case, *supra.* The remainder of them will be disposed of by what we shall say below.

For the reasons stated in the report of the Commission above copied, which need not be repeated here, we have reached the following conclusions:

[1] 1. That the action of the Commission in fixing upon the appreciation of the property value over pre-war prices at forty per cent instead of the twenty per cent fixed upon by the Commission prior to the former appeal, has, in result, and from sufficient findings of fact as substantially stated, at least, as we think, given due consideration to the "present value theory" (which includes due consideration of reproduction value), in conformity with the opinion of this court rendered upon the former appeal; which theory, as stated in that decision, must be considered as "one which must control the decision in this case;" and, hence, there is no error in such action.

[2] 2. That there is no error in the action of the Commission in rejecting the cost of substituted water supply theory of the water company as decisive of the value of the water rights, and in fixing upon $256,100.00 as the value thereof.

[3] 3. That there is no error in the action of the Commission in fixing upon $114,881.00 as the "going value."

[4] This leaves for consideration only one question presented for decision by the assignments of error, namely: Whether the Commission erred in refusing to consider the claims of the water company that certain items of omitted property, of certain aggregate values, referred to in the petition of the water company filed before the Commission on November 23, 1923, should be added to the property valuation.

4. Of these claims, the larger item, namely, that of Item j, aggregating $807,796.00, appears on its face to consist of items of expense entering into the cost of a substituted water supply, which, in view of our conclusion on the subject above expressed, could not be properly allowed. Item h, aggregating $34,621.00, concerns the "going value," and if not covered by the increased allowance which has been made by the Commission, or in so far as not covered thereby, would be precluded by that allowance; since, as we have above held, we consider such allowance of "going value" correct.

5. Of the remaining items of the claims under consideration, we will say that if there has been a substantial omission of property from the valuation as of January 1, 1922, which should have been included under the principles applicable to the case as settled by our above stated conclusions and by the decision of this court on the former appeal, the proper value of such property should be added to the total property value of $1,786,358.00 last found by the Commission. We are, therefore, of the opinion—

[5] 4. That the Commission erred in undertaking to fix the rate as of March 21, 1924. It should have fixed the rate as of January 1, 1922, as it was only as of that date that it fixed upon the value of the property of the water company. A property valuation as of the

latter date could not properly furnish the basis for fixing the rate as of a date so long subsequent as the former date.

[6, 7] The failure of the Commission to permit the water company to prove the value of any omitted property grows out of an erroneous construction upon the part of the Commission and attorneys of the decision of the court heretofore adverted to.

In remanding the case, Judge Kelly says: "The facts and the reasons upon which the Commission based its action as to (1) the appreciation of values over pre war unit prices, (2) water rights, and (3) going value, have not been stated in such manner as would justify this court in presuming *prima facie* that the findings of the Commission are correct, and it would be unfair to the Commission not to make the presumption until the matter has been brought to its attention and it has been allowed the opportunity to certify to this court the facts and reasons required by section 156 of the Constitution. It may be also that the Commission may desire to hear further testimony on the above questions, and if so an opportunity therefor should be afforded."

In construing this language, counsel for the water company contended before the Commission that it was not the intention of the court to limit the inquiry to the three questions mentioned, but that the practical question involved was the right of the company to show the real value of the property for rate-making purposes.

This position was combated by counsel for the Commonwealth. The chairman of the Commission, in ruling upon the question, said:

"Gentlemen, the Commission thinks that Colonel Anderson's position is a practical one—is the correct one; nevertheless, we think that under the holding of

the Supreme Court, 'the facts, and the reasons upon which the Commission based its actions as to (1) the appreciation of values over pre-war unit prices, (2) water rights, and (3) going value,' etc.  *  *  it seems to the Commission that the Commission is limited to those three questions, in taking additional evidence, and that we would not be justified in going into any investigation outside of those questions."

It was not the intention of this court to deprive either of the parties litigant of any rights in the premises.    To base a rate upon an inequitable valuation would amount to a confiscation of property.

[8] As said by Judge Burks in the *Petersburg Gas Company Case*, 132 Va. 82, 110 S. E. 533, 20 A. L. R. 542: "Both the State and Federal Constitutions forbid the taking of private property for public use without making just compensation therefor, and the common law forbids the taking of private property of one person and giving it to another, with or without just compensation."

[9] If, therefore, a rate should be fixed either by the State Corporation Commission or by this court, based upon an insufficient valuation, the same would be illegal.    The company is entitled to have its products sold to the users thereof, so as to yield it a fair return upon the reasonable value of the property at the time it is being used for the public.    *San Diego, etc., Co.* v. *City of National City*, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154.

On the other hand, what the consumer of water is entitled to is a just value and not a fictitious one based upon fine spun theories as to what enters into the valuation of the plant.    In speaking of the difficulty attending the making of rates for the conduct of the business of public service corporations, Judge Kelly,

in *Roanoke W. Co.* v. *Commonwealth, supra,* says: "The subject involves inherent difficulties which up to the present time have baffled the best experts and judicial minds in their efforts to evolve a system sound and just in principle and uniform in application. The reported decisions upon the subject by rate making bodies and by the courts are in a state of conflict and confusion."

To our mind the source of all this "conflict and confusion" is greed—greed upon the part of both seller and consumer. Neither can well exist independent of the other. So long as there is a suggestion by the consumer that public utility companies gather in a pile a handful of rusty nails and old scrap iron and list the "assembled assets" as "working capital and supplies," and so long as the consumer fails or refuses to recognize the real burdens of the companies, just so long will the rate making bodies be called upon to fix rates upon a basis of speculation and not upon something tangible.

Since the "present value theory" and the "prudent investment theory," as applied by experts and judges, have fallen far short of solving the difficulty, we would suggest as a panacea for this grievous economic evil the application of the "golden rule theory" upon the part of both the seller and the consumer.

[10] With respect to the other assignments of error, we are of the opinion that there is no merit in them, and we are further of the opinion that as to the other items, the facts and reasons set forth by the Commission fully meet the requirements of the law.

It is urged, however, that this court should decide upon said remaining items of claim and fix the proper rate; but such items are not shown in the record before us sufficiently specifically to enable us to pass upon them. It is with much regret that we find our-

selves not in a situation to decide what should be added to the value of the property of the water company, if anything, on account of these remaining claims, so as to be able to enter a final decree or order disposing of the case before us.    But in view of the condition of the record we see no escape from a reference back to the Commission, in order that it may hear proof upon the aforesaid remaining items, namely, those designated in said petition as items a, b, c, d, e, f, g and j, and decide what property covered by such items, if any, was omitted property which should have been included in the valuation of the property of the water company as of January 1, 1922, and at what value, if any, under the principles adopted by the Commission in its findings under review which have been approved by our conclusions above stated and by the decision of this court on the former appeal; and accordingly to increase, or not increase, its fixing of the total value of the property of the water company as of January 1, 1922, and to enter its order requiring the Roanoke Water Works Company to file with the Corporation Commission a revised schedule of rates and charges to go into effect as of January 1, 1922, accordingly.

[11] It follows from what has been said that the case will have to be reversed in part and remanded; and the Roanoke Water Works Company having substantially prevailed in its contention as to rates, it is awarded its costs in this behalf expended.

*Reversed in part and remanded.*